IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RICKY WAYNE FISCHER,

Petitioner,

v.

JEAN HILL,

Respondent.

CV. 06-1625-MA

OPINION AND ORDER

Anthony D. Bornstein
Federal Public Defender's Office
101 SW Main Street, Suite 1700
Portland, OR 97204

Attorney for Petitioner

Hardy Myers
Attorney General
Jacqueline Sadker
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096

Attorneys for Respondent

MARSH, Judge

Petitioner, who is under the supervisory custody of the State of Oregon, brings this habeas corpus proceeding pursuant to 28

U.S.C. § 2254. For the reasons set forth below, petitioner's amended habeas corpus petition is denied and this proceeding is dismissed.

**BACKGROUND**

In June 1998, petitioner was indicted for attempted murder and three counts of assault stemming from an altercation with Steven Kliewer with a firearm. Petitioner pleaded not guilty and the case went to trial. The sole basis of petitioner's amended habeas corpus petition involves the events surrounding the trial court's receipt of the verdict and additional instructions to the jury. Therefore, I describe those events in considerable detail.

At the close of the case, the trial court instructed the jury and it began deliberations on December 7, 1999 at approximately 3:22 p.m. The jury broke at 5:16 p.m. that evening and returned the following morning, December 8, 1999 at 8:30 a.m. to continue its deliberations. On December 8 at 4:42 p.m., the jury indicated that it had reached a verdict.

On Count I, Attempted Murder, the jury found petitioner not guilty. On Count 2, Assault in the First Degree, the jury found petitioner not guilty. On Count 3, Assault in the Second Degree, the jury found petitioner guilty. On Count 4, Assault in the Second Degree, the jury found petitioner guilty.

The prosecution requested that the jury be polled. The trial court explained that process to the jury:

> THE COURT: All right. I am going to have the clerk read your name. We will start with juror number one. The clerk is going to, for example, say Count One, Attempted Murder, and then call your name. If this is your verdict as reflected in the verdict form, you would say yes. If it is not your verdict as reflected in the verdict form, you would say no. . . . Everybody have that? Then go to Count Two, et cetera.
>
> JUROR: Could you please say that one more time?
>
> THE COURT: All right. We have the verdict form, everybody knows what it says, I assume. When your name is called, after the count in question, if this is your verdict as reflected on this piece of paper, this verdict form, you would answer yes. If it is not your verdict, you would answer no. With me? All Right. Go ahead. (Trial Transcript at 950.)

The clerk then proceeded to call each of the jurors by name and the jurors responded with a yes or no. On Count One, Attempted Murder, the polling revealed an 11 to 1 not guilty verdict. On Count Two, Assault in the First Degree, the polling revealed a 7 to 5 not guilty verdict. On Count Three, Assault in the Second Degree, the polling revealed an 11 to 1 guilty verdict. On Count Four, Assault in the Second Degree, the polling revealed an 11 to 1 guilty verdict.

Immediately following that poll, the judge and counsel had a discussion in chambers. After that discussion, the judge took another poll of the jurors:

> THE COURT: Okay. Folks, we just wanted to make sure on Count Two. Now, Count Two, Assault in the First

Degree, the jury foreperson, presiding juror, X-ed in not guilty. Okay. We did yes and no. But this time stand up if that is your verdict, not guilty on Count Two.

JUROR: Which is Assault in the First Degree?

THE COURT: Assault in the First Degree, Count Two.

JUROR: Stand up if--

THE COURT: If that reflects your verdict, not guilty.

JUROR: I'm not sure now which one this is.

THE COURT: Okay. All right. Sit down. Let me figure this out. I am going to hand the verdict form back to you, and pass it around the jury and take a look at Count Two. It says Assault in the First Degree, guilty, not guilty, and it's X-ed in not guilty. It's page two of the verdict form. Page one is the Attempted Murder. Are you with me? And I am trying to make sure what your decision was on Count Two. You follow me?

JUROR: Uh-huh.

THE COURT: Do you want to see the verdict form before you tell me this or--

JUROR: What we feel would be easier, if we just say guilty or not guilty, because yes and no is confusing to some people.

THE COURT: Yes. And I--

JUROR: Say it again.

THE COURT: I apologize. I will take a hit on the head for that. Let's redo Count Two.

THE CLERK: Okay.

THE COURT: And we will start with Mr. Lustig and you tell us what your verdict is.

JUROR: And say again what Count Two is.

> THE CLERK: Count Two is Assault in the First Degree.
>
> THE COURT: Now, wait a minute. I think–just a minute. I think we'd better go through the whole thing again since there may be some confusion, yes/no. Let's go through the whole thing again. Start over, Count One, Attempted Murder. (Tr. at 955-57.)

The clerk then polled the jury on each of the counts and the results displayed continued confusion: Count One, Attempted Murder, 10 to 2 not guilty; Count Two, Assault in the First Degree, 6 to 6; Count Three, Assault in the Second Degree, 8 to 4 guilty; and Count Four, Assault in the Second Degree, 11 to 1 guilty.

At that point, the judge had an off-the-record discussion with counsel. Then a juror expressed that there was some confusion among the jurors on the polling results. The court then instructed the jury as follows:

> THE COURT: We have contradictory information from you. It may not be good news for you, but we are going to have you back tomorrow to meet and to--
>
> JUROR: I think, if I may, your Honor.
>
> THE COURT: Yes.
>
> JUROR: I think the confusion is that there's two counts of–when we went through, it's hard to remember whether we are on the first Second Degree or the second Second Degree. (Tr. at 962-63.)

A discussion ensued about whether the jurors could resolve the confusion in ten or fifteen minutes, or whether they needed

additional time. The court concluded it was best to ask the jurors to return the following day:

> THE COURT: Okay. Ladies and Gentlemen, you may be seated. Here's where we are: It appears we have a valid verdict on Count One, Attempted Murder, and on Count Four, recklessly, the reckless Assault in the Second Degree. I think everybody agrees on that.
>
> JUROR: Uh-huh.
>
> . . .
>
> THE COURT: Now, there's confusion on Count Three that probably could be cleared up in ten or fifteen minutes, but that's not the big problem. The big problem is Count Two you appear to have a seven/five split, Assault in the First Degree. And before you can reach a verdict of not guilty or guilty, it must be ten/two. Are you with me? You have X'd in not guilty, but there's only seven not guilty votes. So you follow me on that?
>
> JUROR: Uh-huh. So it has to be ten to two one way or the other?
>
> THE COURT: Correct.
>
> JUROR: And if we can not come to that conclusion?
>
> THE COURT: You have to tell us that you are deadlocked.
>
> JUROR: Okay. What happens if we are deadlocked[?]
>
> THE COURT: Well--
>
> JUROR: –and that--
>
> THE COURT: Are you saying you have exhausted your efforts?
>
> JUROR: No.
>
> JUROR: I don't think so. I would rather talk about it. This is too serious.

THE COURT: All right.

JUROR: What happened in there is that from your description then we were–we were at a deadlock. We felt, though, since there were more votes for not guilty, it wasn't ten to two--

THE COURT: Apparently seven/five.

JUROR: But it was–everybody's perception it weighed more heavily on the not guilty side, and that's how we were to vote as not guilty.

THE COURT: But that's, of course, not good enough there. It has to be ten votes or you have to advise. . . you are hopelessly deadlocked, and then the Court has to be talked into accepting that position, because we want you to make every effort to reach a verdict, if possible.

JUROR: But we didn't know that.

JUROR: We didn't know that.

THE COURT: All right. So what I am going to do is order you back here tomorrow at nine o'clock to deliberate; not on Count One, not on Count Four, just Count Two and Count Three. Everybody understand that?

JUROR: Yes. (Tr. at 965-66.)

Following that exchange, the trial court recessed for the day. The following day, at 11:40 a.m., the jury returned guilty verdicts on Counts Two and Three. The court then polled the jury, which indicated 11 to 1 guilty verdicts on Counts Two and Three. After the poll, the court asked the jury foreperson the following:

THE COURT: . . . When the verdict form was returned yesterday, Count Two was a not guilty finding. I think I am correct on that. We had you polled. Are you

> saying that the – on reflection today that your decision has reversed from yesterday?
>
> JUROR: Uh-huh.
>
> THE COURT: Is that correct?
>
> JUROR: Uh-huh.
>
> THE COURT: I would note, for the record, jurors are shaking their heads yes. . . . [I]s that essentially correct, that it was-–deliberations took place and today you came up with a different verdict than yesterday?
>
> JUROR: Yes. We had quite a struggle over what intent meant, that it meant different things to different people. But, yes, the deliberation was reversed.
>
> THE COURT: And you are satisfied that this does reflect the jury's intent, that is this verdict form?
>
> JUROR: Yes. (Tr. at 975-76.)

The court accepted the verdicts and discharged the jury. Although trial counsel objected to the verdict form on Count Two and made an oral new trial motion, a formal motion for new trial was never filed. (Resp. Ex. 115 p. 6.)

On direct appeal, Petitioner raised solely an evidentiary issue. The Oregon Court of Appeals affirmed from the bench and the Oregon Supreme Court denied review. State v. Fischer, 184 Or. App. 762, 58 P.3d 244 (2002), rev. denied, 335 Or. 180, 63 P.3d 27 (2003).

Petitioner subsequently sought state post-conviction relief, alleging, in pertinent part, that trial counsel was ineffective in failing to object to the trial court's instructions to the

jury to deliberate further after it had reached invalid verdicts on Counts Two and Three. (Resp. Exs. 108 p. 4.) Petitioner testified at the post-conviction proceeding. The state post-conviction court rejected his ineffective assistance of counsel claim, making the following findings and conclusions:

> [T]he primary issue is whether or not the receipt of the jury verdict after further deliberation would be a factual basis for a motion for new trial. And if that motion for new trial had been filed, it would have been successful. . . . On polling the jury it became obvious to Judge Morgan, trial Judge, that the necessary [inaudible] made as far as several of the counts. And he did what I believe the law requires. He indicated to the jury that that was not a valid verdict, that it would not be received by the court in their deliberations. . . I don't think a new trial would've been supported by Oregon laws, so this reasonable probability for success is non-existent. (Resp. Ex. 115, pp. 27-28.)

The Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. (Resp. Exs. 119-20.)

## DISCUSSION

Respondent moves to deny habeas corpus relief on the basis that the state court's rejection of Petitioner's only claim for relief is entitled to deference. I agree.

Under 28 U.S.C. § 2254(d)(1), federal habeas corpus relief may not be granted on a claim that was adjudicated on the merits in state court, unless the adjudication: "resulted in a decision that was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States."

Under Strickland v. Washington, to prevail on a claim of ineffective assistance of counsel, Petitioner must show that (1) his counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. 466 U.S. 668, 687 (1984); Bell v. Cone, 535 U.S. 685, 698-99 (2002); Williams v. Taylor, 529 U.S. 362, 390 (2000). Failure to make the required showing on either prong defeats the ineffectiveness claim.

To prove deficiency of performance, petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688. There is a strong presumption that the counsel's conduct falls within a wide range of reasonable professional assistance. Id. at 689.

To establish prejudice, petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Bell, 535 U.S. at 695; Williams, 529 U.S. at 390-91; Strickland, 466 U.S. at 687, 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Williams, 529 U.S. at 391 (quoting Strickland, 466 U.S. at 694). In the instant proceeding, Petitioner must show that there is a reasonable probability that had his counsel moved for a new trial, such a motion would have been granted and that he would

have received a more favorable outcome. See Kimmelman v. Morrison, 477 U.S. 365, 374-75 (1986) (remanded to determine whether petitioner could demonstrate prejudice by showing a reasonable probability that verdict would have been different absent excludable evidence); Wilson v. Henry, 185 F.3d 986, 990, 991 (9th Cir. 1999)(because new trial motion would have failed, petitioner could not show prejudice based on attorney's failure to file a new trial motion).

Petitioner contends that the trial court's supplemental instructions to the jury were coercive and that counsel's failure to move for a new trial on that basis was prejudicial. According to petitioner, the supplemental instructions amounted to an improper charge under Allen v. United States, 164 U.S. 492 (1896). In Allen, the Supreme Court held that the trial court did not err in giving supplemental instructions to a jury urging them to reach a verdict. Id. at 501-02.

If the jury instructions were not coercive, there can be no error in failing to file a motion challenging them. As the Ninth Circuit has observed "[t]here is . . . nothing talismanic about any single element either making the charge valid or invalid; the fundamental question is whether the jury was improperly coerced." Weaver v. Thompson, 197 F.3d 359, 365 (9th Cir. 1999). The supplemental instruction given by the trial court must be

reviewed "in its context and under all the circumstances." Lowenfield v. Phelps, 484 U.S. 231, 237 (1988).

As detailed at length above, after polling the jurors twice and determining that they had reached an invalid verdict on Counts Two and Three, the court instructed the jurors that they needed to continue deliberating on those counts. Petitioner contends that the trial court's statements that "it may not be good news for you" in requiring them to return the following day was prejudicial in light of his instructions that he would have "to be talked into" accepting a deadlock in deliberations. I disagree. When those statements are viewed in light of the entire dialogue with the jurors, it is clear that the jurors did not feel that they had exhausted their efforts and wanted to return the following day given the seriousness of the situation. Additionally, it is apparent from the record that the jurors failed to understand that they needed 10 votes to reach a valid not guilty verdict.

The amount of time the jury continued to deliberate after the supplemental instructions were given also weighs strongly against a conclusion of coercion. Following the supplemental instructions, the jurors broke for the evening and returned the following morning. The jurors then deliberated for an additional two hours and forty minutes before reaching a verdict. Such a

lengthy deliberation greatly diminishes the likelihood of coercion in this case.

Additionally, Petitioner describes no other indicia of coercion or pressure surrounding the supplemental instructions to the jury, nor do I find any. Although the trial judge did not caution the jurors to hold onto conscientiously held beliefs, the traditional concerns for the will of the minority simply were not present here as it was the minority position that prevailed. In this case, the initial verdict poll was 7 to 5 in favor of acquittal, and the second poll indicated a 6 to 6 split. Even though the jurors ultimately switched their position based on their additional deliberations, there is simply nothing in the record suggesting the trial court pressured them into guilty verdicts on Counts Two and Three. As in Lowenfield, defense counsel at trial did not object to the two jury polls or the supplemental instructions at the time they were given. Lowenfield, 484 U.S. at 240. "[S]uch an omission indicates that the potential for coercion argued now was not apparent to one on the spot." Id. (footnote omitted). Considering the instructions as a whole and the context of the trial judge giving those instructions following his polling of the jury, there was no coercion.

Because the supplemental jury instructions were not coercive, Petitioner has not demonstrated that trial counsel's

failure to file a new trial motion fell below an objective standard of reasonableness, or that there is a reasonable probability that a motion for new trial would have been granted. Accordingly, the post-conviction court's conclusion that trial counsel did not render ineffective assistance is neither contrary to, nor an unreasonable application of, clearly established federal law.

## CONCLUSION

Based on the foregoing, Petitioner's amended petition for writ of habeas corpus (#32) is DENIED, and this proceeding is DISMISSED, with prejudice.

IT IS SO ORDERED.

DATED this _12_ day of January, 2009.

__/s/ Malcolm F. Marsh______
Malcolm F. Marsh
United States District Judge